*In re* FÉLIX TORRES SANTIAGO, Respondent.

No. O-67-5.      Decided June 30, 1967.

224

*J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for The People. *S. L. Lagarde Garcés* and *Manuel Abreu Castillo* for respondent.

ORDER

In compliance with our order of November 17, 1966, the Solicitor General filed a disbarment proceeding against Félix Torres Santiago, attorney at law and notary, alleging the following charge:

"The aforesaid Félix Torres Santiago willfully and knowingly violated the provisions of the 'Act to Establish a Registry of Affidavits or Declarations executed before Notaries and other Officers' by authorizing, in his capacity as notary public, affidavit No. 6930 on October 19, 1965, violating his notarial oath in authorizing by said affidavit a conveyance of a motor vehicle without personally knowing one of the executing parties nor ascertaining his identity through identifying witnesses, thereby giving rise to the forging by said executing party of the signature of another person."

We designated Judge Daniel López Pritchard to act as Special Master to hear and receive the evidence which the parties might introduce, certifying the same and remitting it to his Court with his findings of fact. After the hearing was held, said Special Master submitted the following report which was received together with the certified evidence:

"REPORT AND FINDINGS OF FACT OF THE SPECIAL MASTER

"On February 21, 1967, the Supreme Court of Puerto Rico designated the undersigned judge to act as 'Special Master' to hear and receive the evidence which the parties might introduce

concerning the complaint filed by the Solicitor General of Puerto Rico against attorney and notary Félix Torres Santiago.

"According to authorization of the Supreme Court of Puerto Rico given in its order of March 30, 1967 the corresponding hearing was set for April 28, 1967 at 9:00 A.M. in courtroom No. 1 of the Superior Court, San Juan Part, Criminal Matters.

"On that day respondent, Félix Torres Santiago, appeared personally accompanied by counsel, attorneys Benicio Sánchez Castaño and Manuel Abreu Castillo and the Solicitor General appeared represented by attorneys Elpidio Arcaya and J. F. Rodríguez Rivera, stating that the parties were ready for the hearing.

"It was stipulated by the parties that Félix Torres Santiago is an attorney and notary public, that he was admitted to practice law by the Supreme Court on March 5, 1963, and initiated the practice of notarial work as of March 27, 1963, and that affidavit No. 6930 executed on October 19, 1965, was executed, acknowledged, and signed by respondent in his capacity as notary. The testimony of the witness Segundo Correa Ortiz, custodian of the record of the Department of Public Works in relation to the vehicle license plate No. 872553, was stipulated, and oral testimony was given by Mórtimer Vélez Soto and José A. Pérez Rosa. The sworn statement given by respondent before Nunzio Frattallone Di Gangi, Special Prosecuting Attorney, on July 8, 1966, was introduced in evidence by both the complainant and the respondent, and there was also introduced, as respondent's evidence, a record of Public Works in relation to vehicle license plate No. 872553, and for the purposes of identifying the signature of José A. Pérez Rosa a photocopy of a license of a motor vehicle.

"After the oral and documentary evidence, introduced by both parties and admitted without objection, was heard and examined, the 'Special Master' makes the following:

## "FINDINGS OF FACT

"1. Respondent, Félix Torres Santiago, is an attorney and notary, having been admitted to the bar by the Supreme Court on March 5, 1963 and having initiated notarial work as of March 27, 1963.

"2. That the aforesaid Félix Torres Santiago on October 19, 1965 and in his capacity as notary public executed and signed affidavit No. 6930, the executing parties being José A. Pérez Rosa and Vladimir Torrado Valle.

"3. That Mórtimer Vélez Soto, resident of Juana Díaz, Puerto Rico, is the same person who appeared before respondent on October 19, 1965 and executed affidavit No. 6930 subscribing the name of Vladimir Torrado Valle. Prior to the act of the execution of said affidavit this executing party was not known to the attesting notary.

"4. When affidavit No. 6930 was executed before respondent on October 19, 1965, only the two executing parties and the notary were present, no identifying witnesses having been used.

"San Juan, Puerto Rico, May 24, 1967

　　　　　　　　　(s)　DANIEL E. LÓPEZ PRITCHARD
　　　　　　　　　(s)　DANIEL E. LÓPEZ PRITCHARD
　　　　　　　　　　　　SPECIAL MASTER."

The Acting Solicitor General accepted said report and the findings of fact. So did respondent, but he requested that in the findings of fact "it be stated that Vladimir Torrado Valle was introduced to respondent with such name by the other executing party José A. Pérez Rosa." On a separate resolution it was thus stated by the Special Master.

We have carefully read the transcript of the testimonies given by Mórtimer Vélez Soto and José A. Pérez Rosa, the only witnesses heard at the hearing. We have examined the sworn statement given by respondent on July 8, 1966 before Special Prosecuting Attorney Nunzio Frattallone Di Gangi which was offered and admitted as his only evidence, and also the other documentary evidence received in the case. In our opinion, all that evidence supports and justifies the above-copied findings of fact.

In the sworn statement given by respondent it is stated:

"P.A.  Do you know José A. Pérez Rosa?

"W.  I know him by sight.

"P.A.  Do you remember the transaction mentioned in the warnings made?

"W. Yes, sir, I remember it.

"P.A. Would you give some details about it?

"W. The day to which these facts refer I was alone in my office and two persons came in and said that they wanted to make the conveyance of a motor vehicle. I asked their names, first to the vendor, who said his name was Vladimir Torrado Valle. He was a tall man, apparently sunburned, I asked him his name and he said his name was Vladimir Torrado Valle, I asked him whether he owed money to any of these financing companies on account of the car and he told me that he owed nothing to anyone. I also asked him whether he had any identification and he told me that he had the Social Security card and I asked him whether he had his driver's license in order to see whether his picture was on the back and he told me that he did not have it, he did not have his driver's license nor any other identification and I looked at the Social Security card and it was in the name of Vladimir Torrado Valle, and I returned it to him. Then I took the license of the motor vehicle he showed me as that of the vehicle, I examined it and the name of Vladimir Torrado Valle appeared there, with the address in Arecibo, Box 445, Arecibo, Puerto Rico. Then from the license shown to me I took the number of the license plate which was 872-553. I took the motor number and the make of the vehicle and, likewise, I took the number of the sticker issued by Public Works. After taking these notes, I asked José A. Pérez Rosa his address and whether he was satisfied with the deal he had made, and he told me yes, that he was satisfied and that he believed that it was a good deal for him. After asking also the address of José A. Pérez Rosa, who said he lived at 1208 Izcoa Díaz Street, in Río Piedras, I wrote the names of the vendor and the purchaser on the back of the vehicle's license after requiring the person who said his name was Vladimir Torrado Valle to sign the vehicle's license in my presence and in the presence of Pérez Rosa and Pérez Rosa did likewise as having received from Torrado Valle the vehicle in question. After taking these notes, and Vladimir Torrado Valle having affirmed that he was the owner of the vehicle, I made the entry in my registry of affidavits and gave it the number Affidavit 6930, which I reported to the Superior Court of Puerto Rico in the weekly report. I affixed my stamp on the document and signed it in front of them also. I want to make clear that

there were only three persons in my office, the vendor, the purchaser, and myself.

"P.A. Do you remember whether the person who said his name was Vladimir Torrado Valle introduced himself to you by the name of Mórtimer Vélez Soto, or by the nickname of Morty?

"W. No, sir, he did not say at any time that his name was Mórtimer or Morty.

"P.A. Upon entering your office on that occasion did José A. Pérez Rosa at any time introduce the vendor of the vehicle to you as Mórtimer Vélez Soto or Morty?

"W. He always introduced him as Vladimir Torrado Valle.

"P.A. Pérez Rosa himself?

"W. Yes, sir.

"P.A. So that I understand that you knew Pérez Rosa by sight?

"W. I had seen him on another occasion.

"P.A. And that José A. Pérez Rosa introduced the vendor to you as Vladimir Torrado Valle?

"W. Right, it is so.

"P.A. And was conveyance of money made in your presence at any time?

"W. There was no conveyance of money in my presence.

"P.A. Showing to the witness photostat copies of a motor vehicle license in connection with a 1964 Chevrolet, license plate 872-553 and motor number 41847T218110 in the name of Vladimir Torrado Valle and also photostat copy of the back of said license on conveyance of vehicle dated October 19, 1965. Do you have any difficulty in recognizing these documents?

"W. I do not have difficulty in recognizing those documents since they are the same ones presented to me by Vladimir Torrado Valle in my office and which appear in my affidavit.

"P.A. When you refer to the signature affixed by Vladimir Torrado Valle in your presence you refer to the signature which appears in the upper left side on the back of the license?

"W. Yes, sir. He was the first person to indorse said license as vendor.

"P.A. And the second signature which follows, is it the one affixed by Pérez Rosa in your presence?

"W. Yes, sir, that is the signature they affixed in my presence.

"P.A. Can you tell me whether the rest which appears is in your handwriting?

"W. Yes, sir, with the exception of a number which appears in the lower left side as '911, 78' and an erasure, I do not remember having done that.

"P.A. Did you notice that upon signing as Vladimir Torrado Valle the signature reads 'Vlameder Torrado Valle'?

"W. I did not give my attention to that detail but to the fact of seeing him sign.

"P.A. Did you receive any fee for that service?

"W. I think they paid 3 or 5 dollars, I do not remember exactly.

"P.A. Who paid?

"W. I do not remember which one paid those fees.

"P.A. You say that you knew José A. Pérez Rosa by sight, did you ask José A. Pérez Rosa for an identification?

"W. I did not ask for any since he was the purchaser, I only asked him his address.

"P.A. Did you ask Pérez Rosa whether he knew Vladimir Torrado Valle?

"W. I did not ask him as to that particular.

"P.A. Do you want to add anything more?

"W. I want to explain that I did not suspect at any time that this was not the vendor since he identified himself before me, and in the second place, they did not make any transaction in my office, but it was a deal they had previously made, and as to me he continues to be Vladimir Torrado Valle because he was the person who identified himself to me as Vladimir Torrado Valle.

"P.A. Have you seen again Vladimir Torrado Valle or José A. Pérez Rosa?

"W. I have not seen Vladimir again, I saw Pérez Rosa one day in the Superior Court."

Section 3 of the act which establishes the Registry of Affidavits or Declarations, of March 12, 1908, requires that the authorizing officer should in all cases set forth "that he knows personally the interested party; or knows the witnesses identifying such party." That act permits that when the

officer does not know the executing party personally the latter must be identified to the former's satisfaction "by the two witnesses . . . whose statement to that effect is also signed by them" and whom he should know.

The respondent notary obviously did not know the vendor of the automobile who signed before him the attestation of the conveyance of the license; he only knew the purchaser "by sight." The latter, party in the sale, is the one who introduced the vendor to the notary by the name of Vladimir Torrado Valle, which was the name of another person. The real name of that alleged vendor was Mórtimer Vélez Soto. No identification witnesses intervene.

■ It is true that the notary made use of certain documents which Mórtimer had, seeking to find out the latter's identity. But the notary is permitted to resort to such procedure only when a deed is executed, "if in any serious and extraordinary case it is impossible for a notary to certify to his knowledge of the parties," as provided by § 16 of the Notarial Law in the following terms:

"If in any such serious and extraordinary case it is impossible for a notary to certify to his knowledge of the parties, and the latter are unable to present any identifying witness or witnesses, the notary shall so express, designating the documents presented to him as proof of their name, status and residence, and stating also the cause of such serious and extraordinary case."

A letter written by the said Mórtimer Vélez Soto some twelve days after the conveyance was made by respondent was presented at the hearing which reads thus:

"Juana Díaz, P.R.
November 10, 1965

"Department of Public Works
Motor Vehicle Division
Santurce, P.R.

"Sirs:

"I hereby ask you to drop license plates No. 872-553, corresponding to a 1964 Chevrolet automobile, formerly the property of Blademir Torrado Valle.

"This unit, declared a total loss, was acquired by *Garage Morty*, Juana Díaz, P.R., at public auction of June, 1965, from the company, Insular Underwriters.

"Said unit is on sale for parts in my Yunk garage in Juana Díaz, P.R. *I request to be notified immediately of any transaction to be made with those license plates.*

"Thank you,
Mr. Mórtimer Vélez
Garage Morty
Las Flores 147
Juana Díaz, P.R."

If the notary had known the real Vladimir Torrado Valle, or if he had made use of two identifying witnesses, it would have been very difficult to forge the latter's signature.

We said in *In Re Aponte*, 79 P.R.R. 3, 12 (1956):

"There is no doubt that in acting as they did the respondents violated their notarial oath. The practice of the profession of attorney and notary demands that the persons invested with such a high ministerial duty should always act not only with the greatest zeal but also in strict adherence to the law and the duties imposed on them. The respondents, in acting as they did, were not zealous in the practice of their profession nor did they comply with the provisions of law copied above."

Considering the attendant circumstances the respondent notary Félix Torres Santiago is hereby disciplined by imposing on him a fine of two hundred dollars ($200) which he shall deposit with the Office of the Secretary of this Court

within the term of thirty (30) days after service of notice of the present order.

It was so agreed by the Court as witnesses the signature of the Chief Justice.

(s) Luis Negrón Fernández
*Chief Justice*

I attest:

(s) Joaquín Berríos
*Clerk*